No. 2--06--0940    Filed:  8-13-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01--CF--2075 |
| | ) | |
| STUART W. ROSE, | ) | Honorable |
| | ) | Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

Pursuant to a partially negotiated plea agreement, defendant, Stuart W. Rose, pleaded guilty to intent to manufacture a controlled substance (720 ILCS 570/401(a)(6.6)(B) (West 2000)).  In exchange, the State nol-prossed two other drug charges against him.  The trial court sentenced defendant to 14 years' imprisonment.  On appeal, defendant argues that at sentencing the trial court (1) improperly considered evidence that was suppressed in a prior case against him, and (2) failed to adequately consider mitigating factors.  We affirm.

I. BACKGROUND

On August 16, 2001, defendant was charged with intent to manufacture a controlled substance (720 ILCS 570/401(a)(6.6)(B) (West 2000)); unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(6.5) (West 2000)); and controlled substance trafficking (720 ILCS 570/401.1(a) (West 2000)).  During discovery, defendant sought to obtain the names of

informants to support an entrapment defense. The State argued that the sole informant had only provided defendant with an undercover officer's pager number. The parties initially agreed that defendant would provide a list of people whom he was living with and had befriended. The State would then provide the trial court with the informant's information for an <u>in camera</u> inspection, and the trial court would determine whether disclosure was required based on an entrapment defense. However, the State later moved to reconsider, arguing that, because defendant was claiming that the informant could have been one of many people, he was on a "fishing expedition." The trial court denied the State's motion. After the State refused to provide the informant's information to the trial court, the trial court granted defendant's motion to dismiss the indictment. On appeal, this court held that defendant had not met his burden of showing that disclosure of the informant's identity was necessary to prepare his defense. <u>People v. Rose</u>, 342 Ill. App. 3d 203, 206-07 (2003). We reversed the trial court's ruling and remanded the case for further proceedings. <u>Rose</u>, 342 Ill. App. 3d at 207.

On remand, defendant supplied further details of how particular people induced him to commit the crimes with which he was charged, and he renewed his request for an <u>in camera</u> inspection of the informant's information. The trial court ordered an <u>in camera</u> inspection of the informant's file. Thereafter, it granted in part defendant's motion to disclose, allowing defendant to use the informant's name solely in the preparation of his case.

On February 2, 2006, the parties presented a partially negotiated plea agreement to the trial court. In exchange for defendant pleading guilty to intent to manufacture a controlled substance, the State would nol-pros the remaining charges. The trial court accepted the plea agreement and continued the matter for sentencing.

Defendant's sentencing hearing took place on May 23, 2006. The State asked that the trial court take judicial notice that the codefendant in this case, Jeremy Doucette, had entered a fully negotiated plea agreement under which he was sentenced to eight years' imprisonment. As part of his plea agreement, Doucette was obligated to testify truthfully against defendant.

The parties agreed to the admission of tapes of recorded conversations between defendant and the undercover officer. The State then called Officer Paul Nevara of the Lombard police department as a witness. Nevara testified that on October 29, 1998, he was assigned to the Du Page Metropolitan Enforcement Group, a narcotics task force team. On that day, the team was working with the Glen Ellyn police department regarding a methamphetamine laboratory in defendant's apartment.

At this point in the testimony, the defense objected. Defense counsel pointed out that the evidence about the 1998 laboratory pertained to prior charges against defendant. He argued that the evidence was inadmissible because it had been suppressed due to the police officers' failure to obtain defendant's consent before entering his apartment, in violation of his fourth amendment rights. The State countered that, even if the evidence was inadmissible for a trial, it was admissible at a sentencing hearing. The trial court overruled defendant's continuing objection and allowed testimony regarding the 1998 incident into evidence.

[**Nonpublishable material removed here.**]

Based on the factors in aggravation and mitigation, the trial court sentenced defendant to 14 years' imprisonment. The trial court stated that it would have given defendant a greater sentence if

not for the mitigating factors and defendant's own statement. The trial court subsequently denied defendant's motion to reconsider, and defendant timely appealed.

## II. ANALYSIS

### A. Consideration of Suppressed Evidence

Defendant first argues that at sentencing the trial court improperly considered in aggravation evidence that had been suppressed in a prior case against him. Defendant argues that the trial court's allowance of this evidence was improper (1) based on collateral estoppel, (2) based on the fourth amendment exclusionary rule, and (3) because the evidence was otherwise unreliable. We examine each of these contentions in turn.

Collateral estoppel, a component of double jeopardy, provides that, where there is a valid, final judgment determining an issue of ultimate fact, the same parties cannot litigate the same issue in a future case. People v. Slywka, 365 Ill. App. 3d 34, 41 (2006). Collateral estoppel applies where: (1) the issue decided in the prior suit is identical to the one presented in the current suit; (2) the prior suit contained a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party to or was in privity with a party to the prior suit. Slywka, 365 Ill. App. 3d at 41. The applicability of collateral estoppel is a question of law, which we review de novo. People v. Powell, 349 Ill. App. 3d 906, 909 (2004).

Collateral estoppel is inapplicable here because the first requirement has not been met, in that the ultimate issues of fact in the two cases are not identical. In defendant's 1998 case, the grant of the motion to suppress was based on a determination that defendant's fourth amendment rights had been violated by the police officers' nonconsensual search of his apartment; the ultimate issue of whether defendant was guilty of manufacturing methamphetamine was therefore not reached. In the

instant case, testimony regarding the 1998 methamphetamine lab was provided as evidence of defendant's prior crimes. As the issues adjudicated in the two cases are not identical, collateral estoppel does not apply. Cf. People v. Fulton, 68 Ill. App. 3d 915, 924-25 (1979) (although in civil forfeiture proceeding the State failed to present sufficient evidence that the defendant's car had been used to commit an offense, the ultimate fact of whether the defendant participated in the crime was not litigated, and collateral estoppel did not bar the State from subsequently attempting to prove the defendant guilty of various crimes based on an accountability theory).

Defendant next argues that the trial court erred in considering the suppressed evidence because "important constitutional considerations protecting against unreasonable searches and seizures outweigh the procedural rules governing broader admissibility of evidence during a sentencing hearing." Defendant argues that, by allowing such evidence at the sentencing hearing, the "unconstitutional impairment of [his] rights [was] exacerbated." Whether previously suppressed evidence is admissible in a sentencing hearing presents a question of law, which we review de novo. See People v. Daniels, 187 Ill. 2d 301, 307 (1999) (questions of law reviewed de novo).

We begin our analysis of this issue by considering the types of evidence that are generally admissible in a sentencing hearing. It is well settled that the evidentiary standards used in sentencing are much less rigid than those used in the guilt-innocence phase of trial. People v. Jackson, 149 Ill. 2d 540, 547 (1992). At sentencing, the defendant's guilt has already been settled, and the sentencing judge is charged with the task of determining the type and extent of punishment, within certain statutory and constitutional limits. Jackson, 149 Ill. 2d at 548. " 'Highly relevant--if not essential--to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.' " People v. Adkins, 41 Ill. 2d 297, 300 (1968),

quoting Williams v. New York, 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083 (1949). The trial court may conduct a broad search into a defendant's " 'moral character, habits, social environment, abnormal tendencies, age, natural inclination or aversion to commit crime, and stimuli motivating his conduct, in addition to his family life, occupation, and criminal record.' " People v. Harris, 375 Ill. App. 3d 398, 408-09 (2007), quoting People v. Moore, 250 Ill. App. 3d 906, 919 (1993). The source and type of information that the sentencing court may consider is virtually without bounds. People v. La Pointe, 88 Ill. 2d 482, 496 (1981). For evidence to be admissible in a sentencing hearing, it is required only to be reliable and relevant, a determination that is within the trial court's discretion. Harris, 375 Ill. App. 3d at 409.

In addition to considering a defendant's previous convictions, a sentencing court routinely considers crimes of which the defendant has not been convicted, including crimes for which the defendant has not been prosecuted. Jackson, 149 Ill. 2d at 548. A sentencing court may even consider evidence of crimes of which the defendant has been acquitted. People v. Deleon, 227 Ill. 2d 322, 340 (2008). This is so because a finding of not guilty is not a conclusive finding that the defendant did not commit the crime, but rather means that the State was unable to offer proof beyond a reasonable doubt that he did. Thus, the underlying facts of the previous crime may be considered during a sentencing hearing, where the burden of proof is lower. Jackson, 149 Ill. 2d at 550. The evidence of prior criminal conduct need be only relevant, reliable, and subject to cross-examination. People v. Thomas, 137 Ill. 2d 500, 547 (1990).

We now discuss defendant's rights regarding the suppressed evidence. The judicially created exclusionary rule generally serves to prevent evidence obtained in violation of the fourth amendment from being used in a criminal proceeding against the individual whose constitutional rights were

violated. Illinois v. Krull, 480 U.S. 340, 347, 94 L. Ed. 2d 364, 373, 107 S. Ct. 1160, 1165 (1987). The central purpose of the exclusionary rule is to deter the police from acting unlawfully in the future, thereby effectuating the fourth amendment guarantee against unreasonable searches and seizures. Krull, 480 U.S. at 347, 94 L. Ed. 2d at 373, 107 S. Ct. at 1165. The exclusionary rule is not a personal constitutional right of the aggrieved party, and its application is not intended or able to act as a remedy for the invasion of the party's rights that has already taken place. Krull, 480 U.S. at 347, 94 L. Ed. 2d at 373, 107 S. Ct. at 1165-66. The exclusionary rule is not designed to prevent the use of suppressed evidence in all types of proceedings or against all people. People v. Dowery, 62 Ill. 2d 200, 204 (1975). "[I]n determining whether the 'exclusionary rule' should be extended to certain proceedings a balancing test has been utilized to limit application of the rule 'to those areas where its remedial objectives are thought most efficaciously served.' " Dowery, 62 Ill. 2d at 204, quoting United States v. Calandra, 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 620 (1974).

Our research has not revealed any Illinois case addressing the specific question of whether evidence suppressed on fourth amendment grounds in a prior case nonetheless may be considered at a sentencing hearing on a future charge. One case, People v. Evans, 125 Ill. 2d 50 (1988), discusses a sentencing court's consideration of previously suppressed evidence, but that case is distinguishable. In Evans, the defendant argued on appeal that the sentencing court erred in considering the testimony of an alleged prior rape victim, because during the defendant's trial for that offense the trial court granted his motion to suppress the victim's identification of him. Evans, 125 Ill. 2d at 90. The defendant claimed that this prior suppression made the evidence unreliable at sentencing. Evans, 125 Ill. 2d at 91. Our supreme court held that the defendant's argument was without merit because the defendant failed to inform the sentencing court that the identification had been suppressed and

because the victim's testimony was cumulative of the large amount of evidence in aggravation. Evans, 125 Ill. 2d at 91-92. The instant case, unlike Evans, involves evidence suppressed under the fourth amendment, so the mere fact that the evidence was suppressed does not equate to a finding that it was unreliable. Moreover, defendant preserved his argument in the trial court, and the introduction of the suppressed evidence would not amount to harmless error here.

While there is no Illinois law directly on point, we note that all but one of the federal appellate courts have resolved the issue at hand, and they have all concluded that the exclusionary rule generally does not apply to sentencing hearings. United States v. Acosta, 303 F.3d 78, 86 (1st Cir. 2002); United States v. Ryan, 236 F.3d 1268, 1271-72 (10th Cir. 2001); United States v. Brimah, 214 F.3d 854, 858 (7th Cir. 2000); United States v. Tauil-Hernandez, 88 F.3d 576, 581 (8th Cir. 1996); United States v. Kim, 25 F.3d 1426, 1435 (9th Cir. 1994); United States v. Montoya-Ortiz, 7 F.3d 1171, 1181-82 (5th Cir. 1993); United States v. Jenkins, 4 F.3d 1338, 1344-45 (6th Cir. 1993); United States v. Tejada, 956 F.2d 1256, 1263 (2d Cir. 1992); United States v. Lynch, 934 F.2d 1226, 1236-37 (11th Cir. 1991); United States v. McCrory, 930 F.2d 63, 69 (D.C. Cir. 1991); United States v. Torres, 926 F.2d 321, 325 (3rd Cir. 1991); see also United States v. Nichols, 438 F.3d 437, 441 (4th Cir. 2006) (citing Acosta and cases cited therein with approval). Though we are not required to follow decisions of federal courts other than the United States Supreme Court (People v. Calvert, 326 Ill. App. 3d 414, 424 (2001)), we may use such decisions as guidance (People v. Criss, 307 Ill. App. 3d 888, 900 (1999)). The aforementioned federal appellate courts have noted that a sentencing court may conduct a very broad inquiry into the defendant's background, character, and conduct in order to have the largest range of information available to determine the appropriate punishment. Acosta, 303 F.3d at 85-86. They have recognized that evidence that has been illegally

seized is not inherently unreliable (see, e.g., Brimah, 214 F.3d at 858) and concluded that "the deterrent effect of the exclusionary rule does not outweigh the detrimental effects of excluding reliable evidence on the court's ability to meet its goal of proper sentencing." Acosta, 303 F.3d at 85. Still, some of the federal courts have indicated that the exclusionary rule will apply at sentencing if there is evidence that the police violated the defendant's fourth amendment rights with the purpose of obtaining a greater sentence. See Acosta, 303 F.3d at 85 (cases cited therein).

Although Illinois has not yet had an opportunity to pass judgment on this issue, our supreme court has considered the related question of whether evidence suppressed on fourth amendment grounds in a criminal proceeding could nonetheless be used to revoke probation. In Dowery, the supreme court stated that, "[w]hile a defendant is entitled to due process of law at probation revocation proceedings, significant dissimilarities exist between such proceedings and a criminal trial." Dowery, 62 Ill. 2d at 204. The court noted that the vast majority of cases from other jurisdictions examining the same issue had held that the exclusionary rule did not apply to probation revocation proceedings, because the deterrent effect of extending the rule to such proceedings would be minimal and the rule would interfere with the probation system's ability to gauge a defendant's rehabilitative effort. Dowery, 62 Ill. 2d at 204-05. The Dowery court reached the same result, reasoning that society's interest must be sufficiently considered during a probation revocation hearing and that, "[m]erely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation." Dowery, 62 Ill. 2d at 206.

In People v. Brown, 171 Ill. App. 3d 500 (1988), the appellate court considered the more specific question of whether the exclusionary rule should be applied to the sentencing phase of a

probation revocation proceeding. Relying on Dowery, the appellate court held that the exclusionary rule did not apply and that the trial court could consider the suppressed evidence. Brown, 171 Ill. App. 3d at 503-04. The special concurrence, citing case law that a sentencing judge may conduct a very broad inquiry into a defendant's background, reasoned that the exclusionary rule does not apply to sentencing hearings. Brown, 171 Ill. App. 3d at 504-05 (McCullough, J., specially concurring).

Considering the reasoning in Dowery and Brown, as well as the persuasive authority of the federal appellate decisions, we likewise conclude that the exclusionary rule does not apply to the sentencing phase of criminal proceedings. Though defendant decries the use of the suppressed evidence as exacerbating the violation of his constitutional rights, as discussed the exclusionary rule is not designed as a remedy for the violation of an individual's constitutional rights, but rather is designed to deter future police misconduct. Krull, 480 U.S. at 347, 94 L. Ed. 2d at 373, 107 S. Ct. at 1165-66. Thus, in determining whether the exclusionary rule applies, we conduct a balancing test weighing the potential deterrent effect of applying the rule at sentencing against the goal of having the sentencing judge consider all available relevant and reliable information in fashioning the most appropriate sentence. See Brimah, 214 F.3d at 857-58. We agree with the Seventh Circuit that "the application of the exclusionary rule to the government's case-in-chief *** provides strong incentives for law enforcement officials to follow proper procedure in order to build as strong a case as possible against the defendant during the conviction phase of trial" (Brimah, 214 F.3d at 859), and we conclude that in a case such as the instant one, where the suppressed information is considered in an unrelated case brought years later, any increased deterrent effect of excluding the evidence is almost nonexistent. Though the federal courts have recognized the arguable risk that police could intentionally violate a defendant's fourth amendment rights in order to increase his sentence, we are

in accordance with their conclusion that it is doubtful "that there are many police officers who would risk the fruits of prior legitimate law enforcement activities in so cynical a fashion." Tauil-Hernandez, 88 F.3d at 581. Moreover, in this case there can be no colorable claim that the police violated defendant's fourth amendment rights for the purpose of enhancing an unrelated sentence years later. Against the very minimal deterrent effect of excluding the evidence at sentencing we juxtapose society's broad interest in having criminals appropriately sentenced and the corresponding detrimental effect of excluding relevant and reliable evidence from the sentencing court's determination of the proper punishment. The test obviously weighs in favor of allowing the sentencing court to consider the previously suppressed evidence, as the trial court did in this case.

Defendant notes that our supreme court has stated that the exclusionary rule applies to a "criminal prosecution" (People v. Mayo, 19 Ill. 2d 136, 139 (1960)), and he argues that sentencing is part of a criminal prosecution. However, although the exclusionary rule "usually" prevents evidence suppressed under the fourth amendment from being used in a criminal proceeding against the person whose constitutional rights were violated (Krull, 480 U.S. at 347, 94 L. Ed. 2d at 373, 107 S. Ct. at 1165), our supreme court has recognized that, " ' "[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." ' " Dowery, 62 Ill. 2d at 204, quoting Brown v. Illinois, 422 U.S. 590, 600, 45 L. Ed. 2d 416, 425, 95 S. Ct. 2254, 2260 (1975).

Defendant further argues that Dowery and Brown are distinguishable because those cases involved probation revocation proceedings, which are civil. Defendant maintains that Dowery expressly recognized that there are significant differences between a probation revocation proceeding and a "criminal trial proceeding." In fact, Dowery noted significant differences between a probation

revocation proceeding and a "criminal trial." Dowery, 62 Ill. 2d at 204. This case, of course, involves a criminal sentencing rather than a criminal trial, and, as discussed, the types of evidence that a trial court may consider vary greatly between the trial and sentencing phases of a criminal proceeding. In any event, regardless of the type of proceeding, the test for applying the exclusionary rule requires weighing the likelihood of deterring future police misconduct "against the costs of withholding reliable information from the truth-seeking process." Krull, 480 U.S. at 347, 94 L. Ed. 2d at 373, 480 S. Ct. at 1166. We have concluded that this test weighs against applying the exclusionary rule in criminal sentencing proceedings.

In his final argument on the issue of the suppressed evidence, defendant asserts that the trial court abused its discretion in considering this evidence, because it was otherwise unreliable. The suppressed evidence consisted of items seized from defendant's apartment, namely methamphetamine and purported materials to manufacture the drug. Defendant argues that the evidence was tainted and unreliable because it was obtained through a constitutional violation. However, as we previously stated, evidence that has been illegally seized is not inherently unreliable. Brimah, 214 F.3d at 858. Defendant further argues that the evidence was unreliable because the State did not introduce any evidence to prove that he used the materials or made the methamphetamine. We reiterate that at sentencing the State is not required to prove beyond a reasonable doubt that the defendant was guilty of any previous crimes for which evidence is submitted, and the sentencing court may also consider crimes of which the defendant was acquitted. Jackson, 149 Ill. 2d at 549-50. A sentencing court may go so far as to consider hearsay evidence of uncharged or unconvicted crimes as long as the evidence is relevant and reliable, with the hearsay nature of the evidence going toward its weight rather than its admissibility. People v. Bilski, 333 Ill. App. 3d 808, 818 (2002). Here, Officer Nevara testified

regarding the materials that he and other officers found in defendant's apartment, and Nevara was subject to cross-examination by the defense. The trial court clearly did not abuse its discretion by considering the evidence relevant and reliable.

### B. Length of Sentence

The material in this section is nonpublishable under Supreme Court Rule 23.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Du Page County circuit court.

Affirmed.

HUTCHINSON and GROMETER, JJ., concur.